HOOVEN, OWENS & RENTSCHLER CO. v. JOHN FEATHERSTONE'S
SONS et al. (two cases).

(Circuit Court of Appeals, Eighth Circuit. September 23, 1901.)

Nos. 1,470, 1,471.

1. APPEAL—DECREE FINAL—RIGHTS OF NOMINAL PARTIES UNDETERMINED.
   A decision which renders all the questions between the parties served or appearing in the suit res adjudicata between themselves is a final judgment, and reviewable by appeal in the circuit court of appeals, although the rights of such parties against strangers to the suit, who were named as parties in some of the papers, remain undetermined.

2. SAME—NECESSARY PARTIES.
   A decree in a suit to enforce a mechanic's lien that a complainant shall take nothing by its action, and that it is entitled to no lien against a certain defendant named, is a final decision reviewable by the sole appeal of the complainant, although another necessary party, who was never served with process, and never appeared in the action, was named in the petition and summons as a defendant.

3. GENERAL DECREE THAT COMPLAINANT TAKE NOTHING BY THE ACTION NOT SUSTAINABLE BY MATTER IN ABATEMENT.
   A general decree that the complainant take nothing by the suit, which does not clearly show that it rests upon some matter in abatement which prevents it from barring future actions upon the same cause, cannot be sustained by the sufficiency of the proof of such matter in abatement where there are pleas in bar in the answer, because the legal effect of such a plea is to sustain the latter pleas, and to work a complete estoppel of subsequent suits upon the same cause of action.

4. FACTS SPECIALLY FOUND—SUFFICIENCY TO WARRANT JUDGMENT REVIEWABLE WITHOUT OBJECTION.
   Where the court makes a special finding of facts in an action at law, the question whether or not these facts warrant the judgment rendered thereon is always open for consideration by the appellate court on a writ of error without any objection or exception taken at the time of the entry of the judgment.

5. WRIT OF ERROR AND APPEAL PERMISSIBLE.
   In cases of doubt a party may take an appeal and sue out a writ of error, and the appellate court will review the proceedings below in ac-

111 F.—6

cordance with the rules of that method of review applicable to the nature of the case.

6. MECHANIC'S LIEN—SUIT IN EQUITY—REVIEWABLE BY APPEAL ONLY.

A suit to enforce and foreclose a mechanic's lien is a suit in equity, and the decree rendered upon it is reviewable by appeal, and not by writ of error.

7. METHODS OF REVIEW JURISDICTIONAL AND UNAFFECTED BY STATE PRACTICE.

The methods of review of proceedings in the federal courts fix their power and jurisdiction, and are not affected by the act of conformity, or by the practice or legislation of the states.

8. METHOD OF TRIAL MAY BE WAIVED.

One who consents to the hearing in equity of a legal cause of action or to the trial of an equitable cause of action at law is thereby estopped from successfully objecting to the method of trial in an appellate court.

9. RIGHT TO REVIEW NOT AFFECTED BY WAIVER OF METHOD OF TRIAL.

Consent to try a law suit in equity or an equitable cause of action at law constitutes no waiver of the right to review the proceedings by appeal or writ of error, as the nature of the case may demand, and the appellate court will be governed in its action by the rules applicable to the proper method of review.

10. MECHANIC'S LIEN LAWS SHOULD BE LIBERALLY CONSTRUED.

Statutes giving liens to laborers and material men should be liberally · construed, because they cannot recover back their labor or material, and the improvements upon which they are placed are ordinarily enhanced by their value.

11. SAME—CLAIM—DESCRIPTION OF PROPERTY.

Any description which will enable one familiar with the locality to identify the property upon which the lien is intended to be claimed with reasonable certainty is sufficient in a claim for a lien under Rev. St. Mo. 1899, § 4203.

12. SAME—CONTIGUOUS CITY LOTS COVERED BY SINGLE PLANT SUBJECT TO SINGLE LIEN.

Where one has constructed an improvement consisting of several buildings on adjoining city blocks or lots regardless of the lines, streets, and alleys among them, and has intended to use, and is actually using, the buildings as part of a single plant, so that neither the city lots nor the buildings are adapted to separate uses, all the buildings so constructed may constitute a single improvement, and the tract on which they stand may be a single lot of land, subject to a single lien under the mechanic's lien laws of Missouri (sections 4203, 4204, 4207, Rev. St. 1899).

13. SAME—CLAIM—DIFFERENT CONTRACTS.

A claim for a lien for an aggregate amount of materials furnished under contracts between different parties, and mingled together in one account, is void.

14. SAME.

A single notice or claim of lien for materials furnished to the same property under different contracts between the same parties is sufficient, and valid.

15. SAME.

A claim of a lien for an excessive amount may be sustained pro tanto if the true amount for which the lien is maintainable can be segregated from the aggregate amount claimed.

16. SAME—FIXTURES BETWEEN LIENOR AND LIENEE.

In a controversy between the claimant of a mechanic's lien and the owner of real estate upon which the property of the lienor has been placed, or between vendor and vendee, or between mortgagor and mortgagee, engines, machinery, houses, buildings, and every other thing which is essential to the particular use to which the realty is applied, or between which and the balance of the realty there is a manifest and necessary dependence, or which is intended to be and is permanently

and habitually used as a part of the property constituting the real estate of the owner upon which it was placed, becomes a part of that realty, whether it can be removed without physical injury to the realty or not, however slight its physical connection with the real estate, and even when there is no actual fastening of the one to the other.

17. SAME—RETENTION OF TITLE AS SECURITY NOT FATAL TO.
The retention by contract of title to materials furnished as security for the purchase price by the claimant of a mechanic's lien is not inconsistent with, and will not estop the vendor from enforcing, his statutory lien.

18. SALE—DELIVERY—DESIGNATION OF PLACE NOT ACCEPTANCE NOR INCEPTION OF NEW JOURNEY.
Where an engine was to be delivered by the shipper at the city of the vendee, and when it arrived at the station there the vendee, in answer to the question of the railroad agent, "What disposition?" answered, "Send it to our plant," and it was so sent without extra charge for freight, *held*, that the direction of the vendee was a mere designation of the place of delivery within the original destination, and not the starting of the engine on an additional journey, and that delivery was not made until it was received at the plant.

19. MECHANIC'S LIEN NOT LOST BY DESTRUCTION OF IMPROVEMENT.
A mechanic's lien attaches to the real estate upon which the material or labor is bestowed at the time it is furnished, and is not devested or lost by the subsequent destruction of the improvement.

(Syllabus by the Court.)

In Error to and Appeal from the Circuit Court of the United States for the Western District of Missouri.

This is a suit to enforce a mechanic's lien for the balance of the purchase price of an engine. The Jacob Dold Packing Company, the respondent, was a corporation which owned and operated a packing plant in Kansas City, in the state of Missouri. On December 16, 1897, John Featherstone's Sons, a corporation, contracted to furnish to the Dold Company at Kansas City a refrigerating plant consisting of an engine and other machinery, for the sum of $18,750. The Hooven, Owens & Rentschler Company, another corporation, and the appellant here, agreed with Featherstone's Sons that it would furnish the engine for $6,001.28. It did so. The engine was incorporated with the plant of the Dold Company, and the appellant was paid $1,499.90, while a balance of $4,501.38 of the purchase price remained unpaid. The Rentschler Company filed a claim of a mechanic's lien for this balance, under the statutes of Missouri, upon certain property of the Dold Company at Kansas City in which the engine had been embodied, and brought this suit to enforce its lien. There was a decree that it was entitled to no relief, and this decree is challenged by the appeal before us. (C. C.) 99 Fed. 180.

Edwin C. Meservey (Charles W. German, on the brief), for plaintiff in error and appellant.

Samuel W. Moore (Gardiner Lathrop and Oramel W. Pratt, on the brief), for defendants in error and appellees.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The court specifically found the facts in this case, and then held as conclusions of law that the claim of lien which the appellant filed did not contain a sufficient description of the property sought to be charged to identify it, and that it contained one item, amounting to

$74.35, which was furnished under a different contract from that under which the engine was provided, and for these reasons it rendered a decree that "the plaintiff is not entitled to the enforcement of its alleged mechanic's lien as against the defendant Jacob Dold Packing Company, and that the plaintiff take nothing by its action herein, and that the defendant Jacob Dold Packing Company go hence without day, and have and recover of the plaintiff its costs." The appellant avers that these conclusions of law are erroneous, and that on this account the decree should be reversed. The Dold Company maintains the correctness of these rulings of the court, and also insists that they are not here for our consideration, because: (1) The decree is not final; (2) the suit was tried below as an action at law, no objections were made to the evidence, and its sufficiency to sustain the decree was not challenged by a request that the court should hold it insufficient; and (3) the assignment of errors is alleged to be defective.

The argument in support of the position that the decree is not final runs in this way: This was a suit by the subcontractor, the Rentschler Company, against its debtor, Featherstone's Sons, and the owner of the packing plant, the Dold Company, to enforce a mechanic's lien upon the property of the respondent. The debtor, Featherstone's Sons, was named as a defendant in the petition and summons, but was never properly served with process, and never appeared in the action. It was, however, under the practice in Missouri, a necessary party to the suit, and no final decree for the complainant could be lawfully rendered without its actual or constructive presence in the proceeding. Rev. St. Mo. 1899, § 4211. It is therefore contended that the decree rendered is not final, and hence is not reviewable here, because it does not dispose of the right of the complainant to relief against Featherstone's Sons, but simply determines that it has no lien upon the property of the Dold Company. There are two reasons why this conclusion cannot be sustained. In the first place, while Featherstone's Sons is named in the petition and summons as a defendant, it has never been served with process, and has never appeared in the proceeding, so that its rights are not and cannot be affected any more by the decree than if its name had never appeared in any of the papers in the case. The proceeding is in reality up to this time a suit between the appellant and the Dold Company, so far as their rights under the present decree are concerned, as completely as though they had been the only nominal parties to it. Hence the decree which adjudges that the appellant has no lien upon the property of the latter company is a final and conclusive adjudication of that issue between them, and an effectual estoppel of the appellant from again litigating that question with the Dold Company or its successors in interest. In legal effect upon the parties now here, in finality between them, and in right of review the suit stands as if Featherstone's Sons had never been named as parties to it, and its only nominal parties had been its only real parties, the appellant and the Dold Company. In that case the decree would have been final, and the only necessary parties to its review in this court would have

been the Rentschler Company and the respondent; and this is no less true because a third corporation, that was never served with process, that never appeared, and that was never affected by the proceeding, was named as a defendant in some of the papers at the inception of the suit. The case differs from Hohorst v. Packet Co., 148 U. S. 262, 13 Sup. Ct. 590, 37 L. Ed. 443; Bank v. Smith, 156 U. S. 330, 15 Sup. Ct. 358, 39 L. Ed. 441; Baker v. Bank, 91 Fed. 449, 33 C. C. A. 570; and Railroad Co. v. Sweeney, 103 Fed. 342, 43 C. C. A. 255,—cited by counsel for respondent, in that the parties to the suits in those cases whose rights remained undetermined had either been served with process or had appeared in the suits, and had thus become affected by the proceedings; while in the case at bar Featherstone's Sons has not been and cannot be affected by anything that has thus far been said or done in this suit. For that reason that corporation was not a necessary party to the appeal from this decree, and, inasmuch as the decree, if sustained, is a conclusive estoppel of the Rentschler Company from ever maintaining its claim to a lien upon the property of the respondent, it is a final determination of its right to a lien, and a final decree, which the appellant is entitled to present for review by its sole appeal. In the second place, the decree does not adjudge the claim for a lien upon the property of the Dold Company invalid, and retain the rights of the appellant against Featherstone's Sons for further adjudication in this suit. On the other hand, it conclusively determines every question presented in the case upon the merits, and adjudges that the appellant "shall take nothing by its action." While it is true that the rights of the appellant against Featherstone's Sons are left undetermined, that is not because any issue or right involved in this suit as it stands is left undisposed of, but because the rights of the appellant against Featherstone's Sons were not, and never could be, involved in this proceeding while that corporation remained a stranger to it. The decree was therefore final, and it was properly reviewable upon the sole appeal of the Rentschler Company.

Another untenable position of counsel for respondent may be conveniently noticed here while we are considering the form and effect of this decree. It is that, even if the court below was in error in its conclusions of law relative to the validity of the lien, the decree may be sustained because Featherstone's Sons was not made a party to the proceeding, and the court could not lawfully render a decree foreclosing the lien until that corporation was brought in. But the only decree which the mere absence of Featherstone's Sons as a party to the suit would warrant would be a decree dismissing the bill on that account without prejudice to another suit against the necessary parties upon the same cause of action, while the decree actually rendered was upon the merits, rendered all the issues in the case res adjudicata, and constituted a complete bar to all future suits to enforce the lien. A general decree that the complainant take nothing by the suit, which does not clearly show that it rests upon some matter in abatement which prevents it from barring future actions upon the same cause, cannot be sustained by

the sufficiency of the proof of the matter in abatement, where there are pleas in bar, because the legal effect of the decree is to sustain the latter, and to work a complete estoppel of subsequent suits upon the same cause. Speer v. Board, 88 Fed. 749, 752, 32 C. C. A. 101, 105, 60 U. S. App. 38, 45; House v. Mullen, 22 Wall. 42, 46, 22 L. Ed. 838; Four Hundred and Twenty Min. Co. v. Bullion Min. Co., 9 Fed. Cas. 592,599 (No. 4,989), 3 Sawy. 634; Sheldon v. Edwards, 35 N. Y. 279, 287, 288; U. S. v. Pine River Logging & Improvement Co., 78 Fed. 319, 325, 24 C. C. A. 101, 107, 49 U. S. App. 24, 35.

The next objection of the respondent to our consideration of the merits of this case is that it was tried by consent by the court below without a jury as an action at law; that this court can, therefore, review the proceedings below by writ of error only; and that, as there were no objections to the evidence, and there was no request that the court hold that there was no evidence which would warrant a finding for the defendant, no question is presented for our determination. An examination of the record discloses the fact, however, that, if we were limited to a review under the writ of error, every question presented by the appellant would be fairly raised by the special finding of facts which was made by the trial court and by the decree which is based upon it. Where the court makes a special finding of facts in an action at law, the question whether or not these facts support the judgment rendered thereon is always open for consideration by the appellate court on a writ of error, without objection or exception taken at the time of the entry of the judgment. U. S. v. Ady, 76 Fed. 359, 360, 22 C. C. A. 223, 224, 40 U. S. App. 312, 313; National Bank of Commerce v. First Nat. Bank, 61 Fed. 809, 810, 10 C. C. A. 87, 88, 27 U. S. App. 88, 91; Trust Co. v. Wood, 60 Fed. 346, 348, 8 C. C. A. 658, 660, 19 U. S. App. 567, 571. The question whether the judgment is warranted by the findings presents every alleged error urged by the appellant. But we are not limited to, or governed in this case by, the rules applicable to a review by writ of error. Through abundance of caution the appellant has both taken an appeal and sued out a writ of error. In cases of doubt this course is not the subject of any just criticism, and the appellate court will review the proceedings below in accordance with the rules of that method applicable to the nature of the case before it. McFadden v. Milling Co., 97 Fed. 670, 672, 38 C. C. A. 355, 357; Hurt v. Hollingsworth, 100 U. S. 100, 102, 25 L. Ed. 569. This was a suit to enforce a mechanic's lien, and to compel the sale of real estate to satisfy the debt secured thereby. It was of the nature of a suit to foreclose a mortgage, and it was a suit in equity, and not an action at law. Davis v. Alvord, 94 U. S. 545, 24 L. Ed. 283; Land Co. v. Bradbury, 132 U. S. 509, 10 Sup. Ct. 177, 33 L. Ed. 433; Furnace Co. v. Witherow, 149 U. S. 574, 578, 579, 13 Sup. Ct. 936, 37 L. Ed. 853. The appropriate method for the review of the decree therein was therefore by appeal, and not by writ of error, and the soundness of the result reached below must be tested by the rules governing reviews by appeal, rather than by those applicable to the procedure by writ of error. Rev. St. § 699.

It is earnestly argued that appellant, by consenting to try its case below at law, has waived its right to a review by appeal. Its waiver, however, does not extend to that length. One who consents to the hearing in equity of a legal cause of action, or to the trial of an equitable cause of action at law, is thereby estopped from successfully objecting for the first time in an appellate court to the method of trial which he has adopted. But this is the extent of the estoppel against him. He does not waive his right to a review of the judgment or decree of the trial court by the only method which can be effectual to obtain such a review; that is to say, by writ of error if the cause of action was legal, and by appeal if it was equitable. Any other rule would deprive the defeated party of the right to any relief whatever in every case in which he permitted the trial of an action at law in equity or of an equitable cause of action at law. He could not review a decree upon an equitable cause of action tried at law by writ of error because the federal appellate courts have no power or jurisdiction to review suits in equity by that method; and he could not review such a decree by appeal because he would have waived his right to treat the proceeding—as it was in fact—as a suit in equity. In the same way he would be deprived of the right to review a judgment upon a legal cause of action which he had consented to try in equity. A result of this character would be contrary to the purpose and intent of the parties to such proceedings, unjust, and unreasonable. The acts of congress give to defeated litigants in the national courts the right to a review of final judgments at law against them by writs of error, and a right to a review of final decrees in equity by appeal. These acts grant the power and fix the jurisdiction of the federal appellate courts. They are not matters of form or practice, but matters of power and jurisdiction. They are not affected by the act of conformity (Rev. St. § 914), nor by the legislation or practice of the states; and courts will not presume that litigants have waived or surrendered their rights under them unless this fact is made clearly to appear. Rev. St. § 699; City of Manning v. German Ins. Co. (C. C. A.) 107 Fed. 52, 57. Consent to try a lawsuit in equity or an equitable cause of action at law constitutes no such waiver or surrender. This suit was therefore properly brought to this court by appeal, and the Rentschler Company is entitled to a hearing and decision of the questions it presents in accordance with the rules applicable to that method of review.

Nor is the objection of counsel for the respondent to the specifications of errors more tenable than those which have been considered. Those specifications state that the court erred in holding that the description of the property in the claim of lien which was filed with the clerk of the circuit court was insufficient to sustain the lien, in holding that the insertion of the item of $74.35 in that claim was fatal to the lien, and in holding that the appellant was not entitled to a lien upon the building and improvements and land upon which it was claimed. The evidence, the special findings of fact, and the decree present the questions suggested by these specifications. They were the principal questions discussed at the argument and in the briefs of counsel in this court, and they are so plainly presented by

the assignment of errors that they cannot be justly ignored. We turn, therefore, to the merits of the case.

The Jacob Dold Packing Company owned and operated a packing plant in Kansas City at the time the contracts for the refrigerating plant and for the engine, which was a part thereof, were made. This plant consisted of 19 buildings, located on blocks 18 and 23 of West Kansas addition No. 1 to the city of Kansas City, and certain buildings and ground on the other side of Liberty street, in said city, located upon other blocks. The 19 buildings did not occupy all of blocks 18 and 23, which comprise about six acres of land. North of the buildings on block 18 were railroad tracks used by the Dold Company, and north of these a strip of ground 67 feet and 2 inches wide and 384 feet long, which constitutes the right of way of the Kansas City, Ft. Scott & Memphis Railroad Company. On the original plat of these blocks there is a street between them running east and west, and alleys through them running in the same direction, and the blocks are divided into lots. But the buildings of the Dold Company have been constructed without reference to this street or these alleys, and without regard to the lines of the lots. Some of the buildings stand on parts of two or more lots, some cover portions of the alleys, and some are upon parts of the street. The Dold Company owns all the land in these two blocks upon which these buildings are situated, except the right of way of the railroad company. Fifteen of these 19 buildings upon this tract of land either adjoin each other or are connected together by covered platforms, so that one may pass through them all without leaving the cover of a roof. The four buildings that are not so connected are a pump house, an oil house, an office building, and a stable. All of these two blocks except the right of way of the railroad company was owned, occupied, and operated by the Dold Company as a portion of a single plant for the purpose of conducting its packing business. Many of the buildings were large and imposing structures. That one in which the engine was placed was a brick building four stories high, 177 feet long, 61 feet wide at one end, and 50 feet wide at the other. Part of this building stood upon the alley, and it was one of the 19 which adjoined each other, or were connected with each other by covered platforms, so that they had all the utility and advantage of a single building under a single roof. Adjoining this building in which the engine was placed, with nothing to separate them from it but a fireproof wall, were two buildings,—one four stories high, with a basement, the first two stories of which were built of stone and the two upper stories of brick; the other, five stories high, built entirely of brick. These three buildings had been erected at different times, but at the time the lien was filed they appeared to the casual observer to be a single building, constructed of brick and stone. In this condition of its plant and business, the Dold Company engaged Featherstone's Sons to furnish it with a refrigerating machine, consisting of this engine, condensers, and other apparatus, which the Dold Company received, connected with, and incorporated into that part of its plant on blocks 18 and 23. When the engine was not paid for, the Rentschler Company filed a claim of lien, in which, after stating

that its claim was for a part of the purchase price of the engine furnished to Featherstone's Sons, it described the property upon which it claimed its lien in this way:

"The four (4) story and basement brick, stone, and frame packing house building with composition roof, and all other buildings and improvements connected therewith, or adjacent, or adjoining, and used and operated by Jacob Dold Packing Company as a packing house plant, and situated on the following described premises, to wit: On blocks numbered eighteen (18) and twenty-three (23) West Kansas addition No. One (1) to the city of Kansas (now Kansas City), Jackson county, state of Missouri; said lots being contiguous, and said buildings and improvements erected under one general contract by said John Featherstone's Sons with Jacob Dold Packing Company; said premises, buildings, and improvements belonging to and being owned by said Jacob Dold Packing Company during all the time of the performance of said work and labor and the sale, delivery, and use of said materials in said buildings, and now belonging to and being owned by said Jacob Dold Packing Company."

The statutes of Missouri provide that one who furnishes an engine for any building, erection, or improvements upon land under a contract with the owner thereof or his contractor shall have a lien upon such building, erection, or improvements, and upon the land upon which the same are situated to the extent of one acre, "or if such building, erection or improvement be upon any lot of land in any town, city or village, then such lien shall be upon such building, erection or improvements, and the lot or land upon which the same are situated, to secure the payment for such work or labor done, or materials, fixtures, engine, boiler or machinery furnished as aforesaid." Rev. St. Mo. 1899, § 4203. They also provide that "the entire land, to the extent aforesaid, upon which any such building, erection or other improvement is situated, including as well that part of said land which is not covered with such building, erection or other improvement as that part thereof which is covered with the same, shall be subject to all liens created by this article, to the extent and only to the extent of all the right, title and interest owned therein by the owner or proprietor of such building, erection or other improvement, for whose immediate use or benefit the labor was done or things were furnished." Section 4204. They require the subcontractor to file with the clerk of the circuit court, within four months after the indebtedness shall have accrued, a true account of his demand, "and a true description of the property, or so near as to identify the same, upon which the lien is intended to apply." Section 4207. It will be noticed that the claimant is not required by this statute to furnish a correct or accurate description of the property upon which he claims his lien, but his full duty is performed when he gives such a description as will identify it. The respondent contended below, and the circuit court held, that the description which has been quoted was insufficient to identify the property upon which the appellant intended its lien to apply. But wherein is it insufficient to indicate its intention? It states with admirable clearness that the lien is claimed upon all the adjoining and adjacent buildings and improvements on blocks 18 and 23 which were owned and operated as a packing house plant by the respondent; and the statute provided that the lien should

extend to the entire lot or land owned by the lienee upon which the building or improvement was situated, whether actually occupied thereby or not. Section 4204. Read in the light of this statute, this description comprises all of blocks 18 and 23 except the strip on block 18 which constitutes the right of way of the railroad company.

It is said that there was no "four (4) story and basement brick, stone, and frame packing house building," and therefore it was impossible to identify the property intended to be claimed by the appellant. But this contention rests upon a too exact and technical interpretation of the description, and upon the fact that the improvement which the lienor thus described consisted of three adjoining buildings separated only by fire walls, one of which was a four-story brick without a basement, one of which was a five-story brick, and one of which was a four-story brick and stone building with a basement, and with a frame covered platform around it. There was no other brick and stone building on the two blocks, and the description was plainly intended to point out the block or improvement which comprised these three buildings, which together formed a solid block, and which was not inaptly, although perhaps it was inaccurately, called a four-story and basement brick, stone, and frame packing house building. This isolated portion of the description, however, is not all the means of identification supplied by the claim of lien. It not only points out this building in the words which have been quoted, but it also adds, "and all other buildings and improvements connected therewith, or adjacent, or adjoining, and used and operated by Jacob Dold Packing Company as a packing house plant, and situated on" blocks 18 and 23. This description certainly points to some building on the lot of land comprised in blocks 18 and 23, and all the buildings on those blocks were adjoining or adjacent to each other, and were used as a part of the packing house plant; so that, whatever building was intended to be first named, they are all equally included in the claim. Any description which will enable one familiar with the locality to identify the property on which the lien is claimed with reasonable certainty, is sufficient to sustain it. De Witt v. Smith, 63 Mo. 263; Bradish v. James, 83 Mo. 313, 318; Drexel v. Richards (Neb.) 70 N. W. 23, 24. When the entire description in the claim is fairly read and construed in the light of the statute and of these decisions, it identifies all the buildings and all the land on blocks 18 and 23 owned and used by the Dold Company as a part of its packing plant as the property upon which the lien was intended to apply so clearly that no one seeking to find it, whether familiar or unacquainted with the locality, could fail to clearly identify it by the description in the claim.

Counsel for respondent maintain, however, that, if this be the true construction of the description, the lien is void, because it is not restricted to the specific building in which the engine was placed and to the lot of land on which it stands; and section 4227, Rev. St. Mo. 1899; Matlack v. Lare, 32 Mo. 262; Fitzgerald v. Thomas, 61 Mo. 499; Fitzpatrick v. Thomas, Id. 512; Lemly v. Steel Co., 65

Mo. 545; and Ranson v. Sheehan, 78 Mo. 668,—are cited in support of this view. In Fitzpatrick v. Thomas, 61 Mo. 512, the supreme court of Missouri held that, where separate and unconnected houses were built on separate city lots respectively, a single lien could not be maintained against all the houses and lots for the aggregate expense of their construction. In Ranson v. Sheehan, 78 Mo. 668, that court decided that a claim of a lien upon 15 acres of land in the country, where the land subject to lien is limited to a tract one acre in extent, was invalid because it did not in any way identify the acre to which the lien was intended to apply. These are, perhaps, the strongest cases cited in support of the contention of the respondent. They illustrate the earlier disposition of the Missouri court to construe the mechanic's lien law strictly as in derogation of the common law,—a disposition happily abandoned in its subsequent opinions, and contrary to the public policy of the state as it is evidenced by its legislation and by the later decisions of its courts. Statutes securing upon buildings and improvements the wages of labor and the value of materials bestowed upon them ought to be liberally construed. The labor and material, once bestowed, lose all their value to the laborer or material man. He cannot take them back. They enhance the value of the property upon which they are placed, and its owner, and those who take under him, receive all the benefits of the labor and of the material. In such circumstances the lien of the laborer or material man should be maintained to the full extent to which the statutes give it. Wisconsin Trust Co. v. Robinson & Cary Co., 68 Fed. 778, 780, 15 C. C. A. 668, 670, 32 U. S. App. 435, 439. This policy has been adopted by the legislature of the state of Missouri. After the supreme court had rendered its decision in Fitzpatrick v. Thomas, that legislature expressly provided that, whenever another case of that character arose in that state, the lien of the claimant should be sustained. It gave a single lien upon all the buildings when the improvement consisted of two or more separate constructions erected under one general contract upon contiguous lots. Section 4227. The case at bar does not fall under the terms of this statute, because the buildings constituting that part of the packing plant on blocks 18 and 23 were not erected under one general contract. The respondent accordingly contends that this case must be governed by the decision in Fitzpatrick v. Thomas. Its counsel argues that, if this is not so, section 4227 was futile, and a single lien upon many buildings on separate lots could have been maintained without it. But this argument overlooks the broad distinction between the facts of this case and those which conditioned the Fitzpatrick Case and others of like character. The statute gives a lien upon "the building, erection or improvements and the lot or land upon which the same are situated." Section 4203. In the Fitzgerald Case each building— each improvement—was situated on a separate city lot according to the plat, was a separate improvement, and was intended to be used and capable of being used for a separate purpose. In this case the lines between the original city lots in blocks 18 and 23, the alleys through them, and the street between them have been disre-

garded, and practically obliterated, by the respondent. The city lots are no longer capable of separate use. The buildings on the blocks were not intended, and are not adapted, for independent service, but they are all parts of a single improvement, constructed and used for a single purpose,—the carrying on of the packing business of the respondent. Why should not the land on which this improvement stands be held to be a single tract of land, and lienable as such under the terms of the statute? There is nothing in the words of the law to forbid it. The lien may attach to the "improvements" and to "the lot or land" on which they are situated. By the very terms of the statute it extends to all the land upon which they are situated held by the owner of the improvements, whether occupied by it or not. Section 4204. Why do not all of blocks 18 and 23 upon which these improvements are situated, which is owned by the Dold Company, constitute a single tract of land? Any other construction of the statute and the lien is illiberal, strict, and injurious to both the debtor and the creditor. It would be as disastrous to the interests of the owner of such a plant as this and to the claimant of the lien to segregate and sell a single building in which an engine or a piece of machinery happened to be placed, thus disrupting the plant, as it would be to sell a few miles of a great railroad, or a small part of any manufactory. The portion sold would bring but a modicum of its value, while its segregation from the plant would entail much greater damage than all it was worth upon the owner. The broad terms of the statute themselves, the liberality with which a sound public policy requires that they should be construed, and the later decisions of the supreme court of Missouri, which are cited below, point unerringly to this conclusion. Where one has constructed an improvement consisting of several buildings on adjoining city lots or blocks, regardless of the lines, streets, and alleys among them, has intended that these improvements should be used and is actually operating them as a part of a single plant, so that neither the city lots nor the buildings are adapted to separate uses, all the buildings so constructed may constitute a single improvement, and the tract on which they stand may be a single lot of land, and subject to a single lien under the mechanic's lien law of Missouri (sections 4203, 4204, 4207, Rev. St. 1899). Progress Press Brick & Machine Co. v. Gratiot Brick & Quarry Co., 151 Mo. 501, 519, 52 S. W. 401, 74 Am. St. Rep. 557; Pullis v. Iron Co., 157 Mo. 565, 593, 57 S. W. 1095; Kelley v. City Mills, 126 Mass. 148; Phil. Mech. Liens, § 376. The description in the claim of lien must, therefore, be held to be sufficient to sustain a lien on all that part of blocks 18 and 23 which constitutes a part of the packing plant of the respondent.

Another error specified is that the circuit court held the lien invalid because the appellant inserted in its claim an item of $74.35 for two rocker plates, which were furnished under another and different contract from that which provided for the engine. Under the practice in Missouri, a lien may not be secured for the aggregate amount of materials furnished under distinct contracts between different parties and mingled in one account. O'Connor v.

Railroad Co., 111 Mo. 185, 194, 20 S. W. 16; Lumber Co. v. Stepp, 157 Mo. 366, 384, 57 S. W. 1059. But neither the statute, the decisions of the courts of Missouri, nor the reason of the case call for more than one notice or statement of lien for materials supplied to the same property under different contracts between the same parties. Kearney v. Wurdeman, 33 Mo. App. 447, 456; Kern v. Pfaff, 44 Mo. App. 29, 35; Grace v. Nesbitt, 109 Mo. 9, 16, 18 S. W. 1118; Minneapolis Trust Co. v. Great Northern R. Co. (Minn.) 76 N. W. 953. Nor does the fact that a lienor demands a larger amount in his claim for a lien under a single contract than he is entitled to receive, or the fact that he demands compensation for materials that were furnished under another contract, invalidate his lien for the amount justly due him under the contract specified, if that amount is capable of ascertainment and segregation. Ittner v. Hughes, 133 Mo. 679, 690, 34 S. W. 1110; Allen v. Smelting Co., 73 Mo. 688, 692; Johnson v. Building Co., 23 Mo. App. 546; Lumber Co. v. Strimple, 33 Mo. App. 154; Bambrick v. Association, 53 Mo. App. 225, 239. The appellant brought this suit to enforce its lien for the amount due it under its contract to furnish the engine, and alleged that the machinery and appliances for which it sought a lien were delivered between January 17, 1898, and April 20, 1898. The item which raises the question under discussion appears in the claim of lien under date of July 13, 1898, as two rocker plates, $74.35, and stands entirely separate from the items furnished under the contract for the engine prior to April 21st of that year. At the trial no claim for this item was urged. Indeed, a stipulation was made that, if a delivery of the engine was completed on April 19, 1898, the claim of lien which was filed on August 20, 1898, was too late by one day; but that, if its delivery was on April 20, 1898, the claim was filed in time. This was, in effect, a withdrawal of all claim to enforce the lien for $74.35. The result is that the appellant simply claimed a lien for $74.35 more than it was entitled to enforce a lien for under the particular contract counted upon in its petition, although it was really entitled to a lien for this excess under another contract, which it failed to plead. There is no more reason why its claim for this excess should destroy its lien for the $4,501.38, which was justly due it under the contract it pleaded, than there is why any litigant should lose his right to recover the amount justly due him because he claims more. The demand of this excess in the claim of lien did not invalidate it, and the holding of the court below to the contrary was erroneous.

Counsel for the respondent are not content to rest their case solely upon their contention that the rulings of the court below were right. They insist that, even if those rulings were erroneous, the decree below must be sustained: (1) Because the engine was personalty, and could not form the basis of a lien; (2) because the claim of lien was not filed in time; and (3) because the building in which it was placed was burned. The contention that the engine could not be the foundation of a lien because it was personalty is untenable for two reasons. In the first place, the statutes of Missouri expressly give to the vendor the right to a lien for the

purchase price of an engine, boiler, or machinery provided for any building, erection, or improvement under a contract with the owner or his contractor. Rev. St. Mo. 1899, § 4203. In the second place, this engine was placed in one of the brick buildings constituting part of the packing plant of the respondent, and it was connected with other machinery therein for the purpose of permanently furnishing power to operate the refrigerator and to cool the air in the buildings. While it was capable of removal without disturbing any part of the building in which it was placed, and while it was secured to its foundation by taps screwed upon anchor bolts, and could be removed by simply unscrewing the taps, it was intended to be and it was permanently incorporated into, and habitually used as a part of, the packing house. The line of demarcation between realty and personalty in cases between landlord and tenant is by no means the same as in cases between vendor and vendee, mortgagor and mortgagee, and lienor and lienee, and this for the very sound reason that the relation of landlord and tenant is transitory,—the use of the property is by one who is to stay for a limited time, and many articles are placed upon the realty by the tenant which both parties intend to have removed at the end of the term; while the things placed upon the realty by the vendor, the mortgagor, and the lienee are put there by one whose term of occupancy is unlimited, generally with the intention that they shall become a part of the real estate, and that they shall be perpetually and habitually used with it. In cases of the latter class, and especially where ponderous machinery, whose weight alone is sufficient to hold it in place, is in question, permanent attachment to the realty is by no means an indispensable attribute of a fixture. The true test is the intent to permanently incorporate the article with the plant or property, and the permanent and habitual use of it as a part of the real estate. And the true rule is that in a controversy between the claimant of a mechanic's lien and the owner of real estate upon which the property of the lienor has been placed, or between vendor and vendee, or between mortgagor and mortgagee, engines, machinery, houses, buildings, and every other thing which is essential to the particular use to which the realty is applied, or between which and the balance of the realty there is a manifest and necessary dependence, or which is intended to be and is permanently and habitually used as a part of the property constituting the real estate of the owner upon which it was placed, becomes a part of that realty, whether it can be removed without physical injury to the realty or not, however slight its physical connection with the real estate, and even when there is no actual fastening of the one to the other. Voorhis v. Freeman, 2 Watts & S. 116, 37 Am. Dec. 490; Oves v. Oglesby, 7 Watts, 106; Winslow v. Insurance Co., 4 Metc. (Mass.) 306, 38 Am. Dec. 368; Richardson v. Koch, 81 Mo. 264, 273; Thomas v. Davis, 76 Mo. 72, 79, 43 Am. Rep. 756; Machine Co. v. Cole, 130 Mo. 1, 31 S. W. 922; Progress Press Brick & Machine Co. v. Gratiot Brick & Quarry Co., 151 Mo. 501, 52 S. W. 401, 74 Am. St. Rep. 557; Christian v. Dripps, 28 Pa. 271; Farrar v. Stackpole, 6 Greenl. 154, 157, 19 Am. Dec. 201; Walmsley v. Milne, 7 C. B.

(N. S.) 115; Corliss v. McLagin, 29 Me. 115; Bratton v. Clawson, 2 Strob. 478; Morgan v. Arthurs, 3 Watts, 140; Murdock v. Harris, 20 Barb. 407; Sparks v. Bank, 7 Blackf. 469; Fisher v. Dixon, 12 Clark & F. 312. Under this rule the engine became a part of the realty of the respondent, and that property became subject to the lien for its purchase price.

Nor did the fact that in its contract for the sale of its engine the appellant secured from the contractor, Featherstone's Sons, the stipulation that "the engine," etc., "shall remain our property as security for deferred payments until fully paid for in cash," waive the lien upon the real estate of the respondent granted by the statute, or estop the Rentschler Company from enforcing it. This stipulation is not inconsistent with the grant of the statute. The former retained a lien upon the engine as security for the purchase price; the latter created a lien not only upon the engine, but upon the real estate of the respondent upon which it was placed. The former was a lien by contract, the latter by statute; and neither is destructive of the other. The retention by contract of title to materials furnished as security for the purchase price by the claimant of a mechanic's lien is not inconsistent with, and will not estop the vendor from enforcing his statutory lien. Chicago & A. R. Co. v. Union Rolling Mill Co., 109 U. S. 702, 719, 3 Sup. Ct. 594, 27 L. Ed. 1081; Manufacturing Co. v. Smith (C. C.) 40 Fed. 339, 340, 5 L. R. A. 231; Clark v. Moore, 64 Ill. 279; Anthony v. Smith, 9 Humph. 508; Fogg v. Rogers, 2 Cold. 290.

Was the claim for the lien filed in time? The statute required it to be filed within four months after the indebtedness accrued. It was filed on August 20, 1898. The contract was that the engine should be delivered to the respondent free on board at Kansas City, and at the trial it was stipulated that, if it was not delivered until April 20, 1898, the claim of lien was filed in time. The engine was shipped by way of the Wabash Railroad on April 11, 1898. It arrived at the freight depot of the Wabash Railroad Company at Kansas City on April 19, 1898, whereupon the agent of that company inquired of the respondent by telephone, "What disposition?" and the agent of the latter answered that the car should be sent around by the belt line to the respondent's packing house. It arrived there at 7 a. m. on April 20, 1898, and the Dold Packing Company wired the appellant that the car arrived that day. In our opinion, it made no mistake, and the claim of lien was filed in time. By arrangement between the railroad companies the charge for freight on the belt line, if any, was absorbed in the charge for freight to Kansas City. The carriage by the Wabash Company included delivery, and there could be no delivery except at such a place as was suitable to the delivery of the particular thing carried. Under the arrangement detailed, and in the case of this heavy machinery, that place was the packing house of the Dold Company, and the engine was not delivered to or received by the respondent until it reached its packing house on April 20, 1898. The direction to send it to the packing house was a mere designation of the particular place within the original destination where the property

should be delivered, and not a direction to start it upon an additional journey. Union Trust Co. v. Atchison, T. & S. F. R. Co. (C. C.) 64 Fed. 992, 994; Lewis v. Sharvey, 58 Minn. 464, 59 N. W. 1096.

The suggestion that the lien was lost because the building in which the engine was placed was destroyed by fire in September, 1899, more than a year after it was put in place and in operation, is unworthy of extended discussion. The lien attached to the improvement on blocks 18 and 23, into which it was incorporated, and to the land on which it was situated, in April, 1898, and the subsequent destruction of a part or all of the improvement could not devest the lien upon the real estate and upon every improvement which remained upon it. Linden Steel Co. v. Rough Run Mfg. Co., 158 Pa. 238, 27 Atl. 895; Smith v. Newbaur, 144 Ind. 95, 42 N. E. 40, 1094, 33 L. R. A. 685; Bratton v. Ralph, 14 Ind. App. 153, 42 N. E. 644; Paddock v. Stout, 121 Ill. 571, 581, 13 N. E. 182; State v. Drew, 43 Mo. App. 362; Shine's Ex'x v. Heimburger, 60 Mo. App. 174, 179.

The result of the whole case is that the appellant has a mechanic's lien upon that part of blocks 18 and 23 owned by the respondent; that the decree on the merits against it was erroneous; that this decree was reviewable by appeal, but not by writ of error; and that a decree enforcing the lien cannot be lawfully rendered in the absence of Featherstone's Sons.

The writ of error will accordingly be dismissed, the decree below will be reversed, the case will be remanded to the court below, with instructions to dismiss the petition without prejudice to another suit for the same cause of action within four months after the receipt of the mandate, unless the appellant within that time makes John Featherstone's Sons a party to this suit by proper service of process, or by its answer or appearance, and in that event to render a decree herein not inconsistent with the views expressed in this opinion; and it is so ordered.